Final case for argument is 161728 Secured Mail Solutions v. Universal. May it please the court, I'm William O'Brien representing the plaintiff and appellate at Secured Mail Solutions. Among other things, the inventor, Todd Fitzsimmons, invented the creation and use of a specific barcode in a specific way to solve important problems in preexisting mail verification technology. The trial court erroneously dismissed the case because it deemed the patent claims to be directed to a sweepingly broad abstract idea that it formulated contrary to this court's later decision in Enfish v. Microsoft. Can I just ask you, in your opening brief, unless I missed it, you didn't refer to any specific claims as being representative. We've got different categories here. We have not taken a position that a particular claim or claims are representative of all 234 claims, Your Honor. I think that would be very difficult. So we treat each individually. What does that mean? We have to adjudicate all 236 claims? Or you make statements about the claims. Should we assume that those statements apply with equal force and effect to every single one of the claims? No, Your Honor, but the burden of proof was on a universal a while to show that every claim is individually invalid under Section 101, and we don't think it was our burden to organize the claims into packets that could be subjected to one-on-one analysis. We did divide them into three. But they all got invalidated. Excuse me? They all got invalidated. Yes, Your Honor. So isn't it your obligation here on appeal to point out which of the ones or how they're different? Well, I think we have explained differences. They're broken into three categories, right? Yes, Your Honor. And I think there's other discussion of differences in the claims. We didn't use our word limit quoting claims. To any great extent, there are 234. That would be a pretty difficult obstacle. But one separation between the claims is that there are claims that are directed specifically to barcodes. Another is that there are claims that are directed specifically to identifiers, sometimes specifically barcodes, that have at least three specific values or in many of the claims four specific values, creating a sender-generated unique identifier by concatenating a value assigned by the sender together with sender identification, recipient indication, and cheating. Coming back to what the presiding judge put a finger on, we've got this 234 claims that seem to have been treated as a unit by the district court. Now, there's nothing in the district court opinion picking out particular differences. I didn't read your appellate brief to assign as an article of legal error by the district court of having looked at them together. Well, I think we did, Your Honor. On the step one of ALICE, I think we rather strenuously stated- As you're saying, that's for everyone. The error was to all the claims uniformly. Well, not as to all the claims, yes, but not uniformly, Your Honor. Because, for example, the abstract idea, though it's far too sweeping to capture any of the soft, it is even more inappropriate where the claims recite specifically a barcode, for example. It's even more inappropriate where the claims recite, for example, a barcode that contains the four values I mentioned concatenated into a unique sender-generated identifier. Can we then take those claims and list either of those under a category and to take your argument as addressed to that category? Here are the claims that cite the barcode, and you believe they are somehow different from the ones that don't for the purposes of step one analysis. They're certainly less abstract and more concrete, yes, Your Honor. But we think that in both step one- I'm just trying to figure out how we write an opinion that deals with the 234 claims without citing each claim. I mean, I suppose we could have 234 sections of the opinion, and that'd be a lot of repetition probably in the rationale. Well, this is outside my area of expertise, Your Honor, but I do not think, Your Honors, are required where the court below did lump everything together to disaggregate everything if, in fact, the lumped together- That was the burden of the presiding judge's question to you, I think, was where do our eyeballs focus? Which claim was erroneously found to have embraced an abstract idea? Well, we contend rather strongly that every claim was wrongly- Can I just get onto the- I mean, the abstract idea here, at least for some of the claims, is that the district court said they were directed towards, quote, communicating information about a piece of mail by use of a marking. Is that right? Yes, Your Honor. Okay, and your answer to that, you started to get to it a little earlier, is that you should be saved from the conclusion of an abstract idea because you use the communication of information as done through barcodes in your claims? I'm just trying to understand what your argument is as to why your claim is not abstract. Well, one reason is that, for example, if Your Honor wanted to look at Claim 13 of the 032 patent, it's a concatenation of four specific values to create a unique identifier assigned by the- Well, can we just look at Claim 1 of the, I guess, I'm not sure, is there an 093? Yeah, that is- I mean, we can't at this juncture. We've got your briefs and we've got all the appendix, but I don't think for purposes of the 15-minute dialogue we have here, we're equipped to go through all of these claims. Am I wrong or am I right that the basis for at least the court concluding that there was an abstract idea in some of the claims at least was because they construed the claims as being directed to communicating information about a piece of mail by using a marking? Well, you're right and, Your Honor, you could go further. That was the only abstract idea that the court found and the court treated it as that every single claim was directed. Okay, so let's look at the ones that are dealing with the barcode. Is it your position that because the communication of information is done through barcodes in the claims, that's what makes it non-abstract? No, that's only one factor, Your Honor, but the thing that received the most emphasis in obtaining these patents was that the use of the sender-generated, the creation and use of the sender-generated unique identifier, which solved a serious problem or a variety of problems, including a very serious problem of how to authenticate mail and be comfortable with its contents. So in the technology, the sender attributes certain information to whatever they're going to send. Would you call that encoding? Are they coding? Is this technology about coding and encoding? Your Honor, I think it's common to call the creation of the barcode as a form of encoding. So certainly in that sense, I think prior to the creation of the barcode, that there would be a computerized formulation of a concatenated numerical value that's going to be encoded into the barcode. So you could also talk about that as another encoding process. So the basic technology here is the assignment of certain information to a package or whatever it is that you're going to send. That is the… Just at a basic level. At a very high level, but that's not what the claims are directed to, because the claims are directed to something much more specific that solves a problem with the technology that Your Honor just referred to. So what was invented here? You said they're aimed at something very specific. What is it? Well, the single most important thing, in my view, and most prominent in the prosecution history, is the creation of this sender-generated unique identifier, which is, in some of the claims in preferred embodiment, made by concatenating a value assigned by the sender with three other forms of information. But what does that mean, a genuine identifier? It's a sender. If I'm the sender and I use a barcode technology and I say, Jim, that's a genuine identifier, correct? And it goes off and the other end, you use another barcode and you say, well, Jim sent me this. But you can add to it. It can be more complex than that and address the content of the package. Well, the point here is it permits authentication by contacting the sender electronically and finding out that, yes, there is a package that bears this unique identifier and it is coming from this sender and it is intended for me. Okay. So what makes this all work is the fact that you've ascribed, I use the word attributed, you've ascribed certain information, which the identifier or all the other, the list of stuff, you ascribe that to a particular package and it goes off. Somebody at the other end can get on the Internet and look at that and say, well, Jim sent me a package. Well, but the person ascribing it is the sender and that's of critical importance because the post office might genuinely believe that a certain person is sending me a package and yet that package could be coming from someone else. At bottom we have, the sender is ascribing information to a package. The receiver has access to that information via the computer. So you're encoding or you're coding particular packages and giving that code to somebody else. They insert the code and out pops some of that information. Well, yeah, to be more specific, in many of the claims, the recipient is then communicating with the sender electronically and verifying directly with the sender this is a package that exists created by the sender, that was sent to me by the sender and other information. What makes it all work here is the inscription of the information or the scribing of the information to a package. That is a necessary step in all of the claims, yes, Your Honor. Why is that not abstract? For example, it would be as if I put, I get these little return, my name and my home address when I give money to the Veterans of Foreign Wars. I get these little things put on when I send a bill. Up in the upper left-hand corner of the envelope, I put on my return address. That's sender generated to tell whoever I'm sending it to it came from me. And what the invention is to have a barcode that actually verifies what I said. But it's more specific than that, Your Honor. It's a barcode that just has who the sender is. It could contain more information than that. But at the first level, instead of me putting my return address on, which I do for the benefit of the post office mainly, to bring it back to me if the other guy didn't take it. But what the barcode simply does is to confirm to whoever received my mail that Clevenger sent it to them. Now I can conclude other information, the barcode. Not only can, but must, in order to practice any of the claims of these patents. So it must take my hypothetical. What more must the barcode do than simply confirm my return address? If all it was doing was confirming my address, it would still infringe, right? Somebody that used the barcode for that? It would infringe some claims only if it's done in the particular way that the claims the claims claim in terms of how the identifier is created by who, what its contents are, what its specific contents are. I think that's what the presiding judge was asking when she asked the embedding step question. So what I'm trying to get at is what are the claims doing through that barcode identifier, sender created identifier, that is exceptional, unusual, different, whatever? Well, they're doing different things, but one is providing reliable confirmation directly from the sender instead of communicating with the post office and finding out they believe that a certain person sent you this package and then having to check it before you're going to find out whether in fact it's disguised, it's from someone else, it's got anthrax in it or whatever. You are confirming directly with the sender this is a package that they sent you and in other claims you're getting contents of the sender, you're establishing Is the computer doing anything different than I could do without the benefit of the computer? Yes, it is and in some of the If the recipient called me up and asked me some questions I could answer all this information that's going through the two-way barcode. Well, I'm not So that's the first level of generality and it seemed to me that my argument by you putting your return label on the mail is that is a sender generated way of telling the recipient who sent it. Well, your honor, in NFISH you could say well the first level of generality you've got You've got a database that's got data in it and it's got columns I'm sorry, it's got rows but the court held that's not really what the invention is directed to. The claims are directed to a more specific self-referential table one that's got intersecting columns and rows and here we're not talking about just any kind of identification we're talking about an identification that is generated in a specific way by the sender by assigning a number, the sender information, the recipient information, and the shipping of it. I'm going to cut you off because you've exceeded your time and we'll store a couple minutes of rebuttal but let's hear from the other side. Thank you, your honor. May it please the court. The concept of communicating information about a mail piece by using a marking on the mail's packaging is abstract and it's abstract whether the sender authors the communication or not it's abstract whether the content of the communication itself is general or specific and it's abstract whether the communication is made by use of a pen and written in English or it's made by use of a barcode on the mail piece. Every one of secured mail's patents and every claim is directed to the same abstract concept and the claims recite nothing beyond the abstract concept other than do it on a computer. Every claim implements the abstract concept using only conventional computer technology. Why is it an abstract concept? Communicating information about a mail piece by use of a marking. So I'm putting my return address sticker on a piece of mail. That's a marking, right? That's communicating information. What's abstract about that? Pretty real, isn't it? I mean, I peel the sticker off and I put it on the envelope. Your honor, it's an abstract concept under the court's line of cases that finds that fundamental economic practices or practices of ancient lineage are abstract concepts and also I realize that there's language that says abstract lineage. There are also cases that say it's not old lineage. Why is the fact that something is old lineage make a difference as to whether something is or is not abstract? Because I think the fundamental point of Alice was, and Bilski really before it, was you can't take a practice that was done pre-computer age and then obtain patent claims. But why does that make it abstract? I got to understand why you can't do it. It's been around too long. Like, quote, it's obvious. But why does it make it abstract as an intellectual matter? Especially where we have cases that say, well, even though what you're doing isn't old, it's brand new, it's still abstract. I think, your honor, one authority that is instructive on this would be, for example, Judge Raina's dissent in the MDOX case where he explains that there are sort of some different categories of things that have been found to be falling within the abstract concept, exception to Section 101. And one of those things is fundamental economic practices of ancient lineage. Lineage by say, versus Google, would be a good example of a precedent here where the court used that exception. And I think it goes back to the idea that if it's something that, not to introduce additional jargon to answer your question, your honor, but if it's something that is sort of a mental process, it's something that people do in their heads, they could do and did do using pencil and paper historically, it's problematic if now that we're in the computer age, parties are able to obtain a 20-year-long monopoly on using computers in their most conventional way to perform those things which are of ancient lineage. And the claims here do nothing more than use computer technology in its most conventional ways, in its most conventional arrangements. I think if the court refers to Figures 1 and 2 of these patents, that would be very clear. The written description provides additional clarity as to how old this technology or routine it is. A barcode scanner scans barcodes in the invention. A computer is used to store information. Two computers communicate over the internet. Now, if the court has any questions about any particular claim of any of these patents, I would be happy to discuss a particular claim. Why was there not the identification of representative claims in this process? You know, it's just typical. Your Honor, there was in fact identification of representative claims by the district court. And so if you'll hear me for a moment, I'll explain what happened. We filed our, we received the complaint, we filed our motion to dismiss under Rule 12.6. In our brief supporting the motion, we addressed every one of the 234 claims. Yes, we had to group some together, but we did address why each one didn't add an inventive concept at Step 2. That's not in the appendix because we haven't included our whole brief for this court's rules, but it's available on PACER. The district court then, after reading the briefing from both parties, at Appendix Page 8, examined all of the claims and found that four claims could be considered representative based on the arguments that were raised below. And those were based on those three categories that Your Honor has discussed. Then what the district court did was evaluate those particular claims. And then at Appendix Pages 21 to 23, further addressed each of the other claims that the patent owner raised in its opposition to the motion to dismiss. And so I think what the district court here was really exemplary of the way district courts should handle this type of a case. The court looked at all the claims, that's at Appendix Page 8, identified some representative funds, made rulings based on that, and then, as Your Honor has pointed out, in the opening brief on appeal, there's not a single claim that is listed or examined in detail. As I say, if there's a particular claim... So for us to write an opinion then, we could go back to the district court's categories that they established and address those claims and apply that to the whole? I think so, Your Honor. Just to clarify, the district court did not establish the three categories. Those were in the complaint itself, split those categories out. But the district court did utilize those. And I think it's fair to say that given the way that the case has been briefed, that the appellant has sort of itself identified these three different categories and said, here are the different categories of claims that you would need to look at. So as I said, if there's any claim or any other issue anyone of Your Honors would like to discuss, I would be happy to address it otherwise. Universal Law does thank the court for its consideration of the case. Thank you. Thank you. Your Honor, Your Honors, the counsel misstated that there's nothing in these claims except taking the abstract idea and doing it on a computer. That is, there is far more than that. We never would have gotten any patents if there had been merely this abstract idea. The specifics are not of ancient lineage. In fact, there's no evidence that the additional features beyond the abstract idea, the very broad abstract idea, are not inventive. You said the counsel misstated it. What you're really saying is the district court embraced it, not what counsel was saying. So you're also saying the district court misstated what the claims are about. I mean, that's what this appeal is about, right? Well, that's right, Your Honor. And the district court created kind of a bit of a parts list of various things and different claims, but allowed to fall through the cracks of the two steps the whole basis on which the patents had been obtained, such as the gender-generated unique identifier. So Baskin says it's the burden of the defendant to show no inventive concept as a matter of law. They provide no evidence of that. Micro says it's their burden to show no preemption. They haven't shown that. Is it your view that a unique identifier is not abstract? Thank you. The term unique identifier out of context might be abstract. In your context. Our unique identifier is not abstract, as, for example, claim 13 of 032 Patent. The concept of a unique identifier, in your view, is that abstract? Well, there might be an abstract concept of unique identifier. I'm not sure. The abstract concept of an identifier like airplane, but when you have a specific identifier that solves problems by being different, like in Baskin, there was a problem solved by moving the location of the filtering software. Here, there's a problem solved by moving the location of where the identifier is created. In Baskin, that creates a problem. How do you filter people the way they want to be filtered? And the solution was, well, you put their customizable filtering criteria at the same remote location where you're doing the filtering. Well, here, we solved the problem of having a sender-generated unique identifier by concatenating information such that the sender can generate a unique identifier, whereas the prior art was the mail carrier was regarded as the only one able to do that. Thank you. Thank you. We thank both sides for cases submitted. That concludes our proceedings for this morning. All rise. The Honorable Court is adjourned until Monday morning at 3 o'clock a.m.